UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| KOKOPELLI COMMUNITY WORKSHOP CORPORATION, et al.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>SELECT PORTFOLIO SERVICING, INC., et al.,<br><br>    Defendants. | CASE NO. 10CV1605 DMS (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT BY DEFENDANTS GOLDMAN SACHS MORTGAGE COMPANY, LITTON LOAN SERVICING, AND MTGLQ INVESTORS, LP** |
|---|---|

Pending before the Court are motions to dismiss Plaintiffs' Third Amended Complaint ("TAC") by (1) Goldman Sachs Mortgage Company ("Goldman") and (2) Litton Loan Servicing ("Litton") and MTGLQ Investors, LP ("MTGLQ" and, with Goldman and Litton, "Defendants"). (Docs. 82-83.) For the following reasons, Goldman's motion to dismiss is granted and Litton and MTGLQ's motion to dismiss is granted in part and denied in part.

**I.**

**BACKGROUND**

On November 7, 2005, Plaintiffs obtained a refinance mortgage loan from Novelle Financial Services in the amount of $649,000.00, secured by a Deed of Trust on the subject property, which

Plaintiff Betty Bryan purchased in 1950. (TAC ¶¶ 2, 46; MTGLQ/Litton RJN Ex. 1.)[1] Plaintiffs allege they sent a notice of rescission to certain Defendants pursuant to the Truth in Lending Act, dated February 5, 2007. (TAC at ¶¶ 29, 40, 111, 137, 140.) Subsequent to the alleged notice of rescission, Plaintiffs made an additional approximately $80,000 in payments to Defendant Select Portfolio Servicing, Inc. ("SPS"). (*Id.* at ¶¶ 282-83.) Nonetheless, a Notice of Default was recorded on June 19, 2008. (MTGLQ/Litton RJN Ex. 3.) Plaintiffs filed a Complaint in San Diego Superior Court on November 3, 2008. (TAC ¶¶ 37, 49.) An Assignment of the Deed of Trust transferring the Deed to MTGLQ Investors, LP was signed on October 21, 2008 and recorded on December 15, 2008. (MTGLQ/Litton RJN Ex. 2.) Plaintiff Betty Bryan filed for Chapter 13 bankruptcy on November 4, 2008. (TAC ¶ 122.) On March 23, 2009, Plaintiffs Betty Bryan and Catherine Bryan recorded a Grant Deed deeding their interest in the subject property to Kokopelli Community Workshop Corporation. (MTGLQ/Litton RJN Ex. 5.) A Trustee's Deed Upon Sale was recorded on October 30, 2009, granting to MTGLQ Investors, LP all interest in the subject property under the Deed of Trust. (MTGLQ/Litton RJN Ex. 6.) This action was removed to this Court on August 2, 2010. (Doc. 1.) Plaintiffs subsequently filed the TAC on October 8, 2010. (Doc. 9.)

The TAC includes 18 claims for relief: (1) violation of the Truth in Lending Act ("TILA"), (2) violation fo the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), (4) wrongful foreclosure, (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), (6) breach of fiduciary duty, (7) fraud–intentional misrepresentation, (8) fraud–negligent misrepresentation, (9) violation of California Business and Professions Code § 17200, (10) breach of contract, (11) breach of implied covenant of good faith and fair dealing, (12) violation of California Civil Code § 2923.5, (13) quiet title, (14) elder abuse-

---

[1] In support of their motion to dismiss, Defendants Litton and MTGLQ request the Court take judicial notice of the following documents: (1) Deed of Trust, (2) Corporate Assignment of Deed of Trust, (3) Notice of Default, (4)Notice of Trustee's Sale, (5) Grant Deed, and (6) Trustee's Deed Upon Sale. Goldman similarly asks the Court to take judicial notice of these documents, as well as documents filed in this action and the docket for this action prior to removal. A court may take judicial notice of facts that are not subject to reasonable dispute and are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As the documents submitted by Defendants are matters of public record subject to judicial notice under Federal Rule of Evidence 201, Defendants' requests for judicial notice are granted.

violation of Welfare and Institutions Code § 15610, (15) rescission, (16) accounting, (17) to set aside trustee's sale, and (18) to cancel the trust deed.

Defendants Bill Koch and SPS filed a motion to dismiss Plaintiffs' TAC on October 28, 2010. (Doc. 13.)  On January 24, 2011, Defendant Stephan Wichmann filed a motion to dismiss the TAC. (Doc. 36.)  On February 22, 2011, the Court issued an Order granting Defendant Stephen Wichmann's unopposed motion to dismiss the TAC with prejudice and granting in part and denying in part the motion to dismiss filed by Defendants Bill Koch and SPS. (Doc. 46.)  The Court granted Plaintiffs leave to file a Fourth Amended Complaint within 20 days of the date of the Order, which Plaintiffs elected not to do.  The Court issued an Order on April 14, 2011 dismissing Plaintiff Kopopelli Community Workshop Corporation from the action in light of Plaintiffs' failure to timely substitute in new counsel and resulting *pro se* status and instructing Defendants to file a response to the TAC by May 2, 2011. (Doc. 68.)  Accordingly, Defendants filed the instant motions to dismiss on May 2, 2011. (Docs. 82-83.)  Plaintiffs filed an opposition to the motions and Defendants each filed a reply. (Docs. 100, 102-03.)

## II.

## LEGAL STANDARD

A party may move to dismiss a claim under Rule 12(b)(6) if the claimant fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Federal Rules require a pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court, however, recently established a more stringent standard of review for pleadings in the context of 12(b)(6) motions to dismiss.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The reviewing court must therefore "identify the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

## III.

## DISCUSSION

**A.     Goldman**

As an initial matter, Goldman argues Plaintiffs' conclusory allegations that Goldman is an "investor" or "creditor" with respect to their mortgage are insufficient to support any of the claims stated against Goldman in the TAC and such allegations are refuted by the documents attached to the TAC, none of which indicate Goldman is connected to Plaintiffs' mortgage in any way. Goldman argues "GSAMP Trust 2006-HE3," which is a separate entity from Goldman and which has not been named by Plaintiffs as a defendant in this action, owned Plaintiffs' loan for a short while, but there is no evidence Goldman was in any way involved with Plaintiffs' loan at any point. On reply, Goldman further argues, even if Goldman owned Plaintiffs' loan for a brief period as it was transitioned from the previous owner to the GSAMP Trust 2006-HE3, as Plaintiffs argue in their opposition, such brief ownership is not sufficient to support the claims against Goldman in the TAC. In the TAC, Plaintiffs allege Goldman is liable to them based on its relationships with other named defendants. (*See* TAC at 2 (Plaintiffs are "alleging that their federal and state rights were violated, against: GOLDMAN SACHS BANK d/b/a MTGLQ INVESTORS LP. GOLDMAN SACHS BANK AS ACTING TRUSTEE ON BEHALF OF THE HOLDERS OF THE GSAMP TRUST 2006-HE3 MORTGAGE PASS THRU CERTIFICATES SERIES 2006-HE3. . . . DEMARCO FLETCHER, ACTING IN HIS CAPACITY AS SALES AGENT FOR GOLDMAN SACHS BANK. GOLDMAN SACHS CAPITAL ASSOCIATION . . . STEPHEN WICHMANN IN HIS CAPACITY AS ATTORNEY AND AGENT FOR GOLDMAN SACHS BANK."); *see also id.* at ¶¶ 29, 33, 35.) Plaintiffs first allege "Goldman Sachs Bank was and is acting on behalf of the trust beneficiary, AS ACTING TRUSTEE ON BEHALF OF THE HOLDERS OF THE GSAMP TRUST 2006-HE-3 MORTGAGE PASS THRU CERTIFICATES." (TAC ¶¶ 34, 89.) However, LaSalle Bank is the acting trustee of holders of the

1  GSAMP Trust 2006-HE-3, as stated in the Corporate Assignment of Deed of Trust. (Goldman RJN
2  Ex. 3.)

3  Plaintiffs also allege certain other defendants were acting as agents of Goldman. "To allege
4  an agency relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to alter
5  legal relations between principal and third persons and between principal and himself; (2) that the
6  agent is a fiduciary with respect to matters within scope of agency; and (3) that the principal has right
7  to control the conduct of the agent with respect to matters entrusted to him." *Palomares v. Bear*
8  *Stearns Res. Mrtg. Corp.*, No. 07cv1899 WQH (BLM), 2008 WL 686683, at *4 (S.D. Cal. Mar. 13,
9  2008)(citation omitted). Plaintiffs allege "they will provide reasonable discovery to the Court and
10 expert witness testimony substantiating and proving the principal agent relationship between mortgage
11 loan broker, Defendant Demarco Fletcher and Defendant Select Portfolio, Defendant Litton Loan
12 Service, and Defendant Goldman Sachs Bank." (TAC ¶ 57.) However, they do not allege any facts
13 in support of their claim of an agency relationship between Goldman and other entities in the TAC.

14 Similarly, Plaintiffs' allegations that Goldman is the parent company of other entities are
15 insufficient to support claims against Goldman. (*See id.* at ¶¶ 18 ("MTGLQ Investor, L.P. . . . is a
16 limited partnership of unknown capacity directly and wholly owned by Goldman Sachs Bank"), 19
17 ("Litton Loan Service . . . is a mortgage servicer of unknown capacity directly and wholly owned by
18 Goldman Sachs Bank"), 21 ("Select Portfolio Servicing Incorporated . . . is directly owned by
19 defendant Goldman Sachs Bank").) A parent company is not generally liable for the acts of its
20 subsidiaries merely because of the corporate relationship. *See, e.g., Walker v. Signal Cos.*, 84 Cal.
21 App. 3d 982, 1001 (1978)("more is required than solely a parent-subsidiary corporate relationship to
22 create liability of a parent for the actions of its subsidiary"). Plaintiffs here have not alleged facts
23 supporting a claim for liability on the basis of alter ego. The Court agrees Plaintiffs have failed to
24 make sufficient factual allegations as to conduct by Goldman and have failed to allege facts supporting
25 a finding of Goldman's vicarious liability for the actions of other defendants. Nonetheless, the Court
26 addresses each of Plaintiffs' claims below.
27 //
28 //

**B.     TILA and Rescission**

Plaintiffs allege they were not provided the requisite disclosures under TILA at the time of their loan, thereby extending their right of rescission to three years from the date of the loan; they subsequently exercised their right to rescind the loan pursuant to TILA by sending Defendants a written notice of rescission; and Defendants acted wrongfully with regard to Plaintiffs' alleged rescission. (TAC ¶¶ 39-41, 43, 46, 49, 74, 111, 135, 140, 146-47.) A claim for damages pursuant to TILA is subject to a one-year statute of limitations, which generally runs from the consummation of the transaction at issue. 15 U.S.C. § 1640(e); *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Claims of rescission under TILA are subject to a maximum three-year statute of limitations. 15 U.S.C. § 1635(f)("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor."); 12 C.F.R. § 226.23(a)(3). Plaintiffs' loan closed on or about November 18, 2005.

**1.     Litton and MTGLQ**

Contrary to Plaintiffs' assertion, rescission under TILA is not automatic unless the creditor acquiesces to the rescission, which clearly did not occur here. Rather, "rescission under § 1635(b) is an ongoing process consisting of a number of steps." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003). "[U]nder the statute and the regulation, the security interest 'becomes void' only when the consumer 'rescinds' the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor." *Id.* at 1172. Nonetheless, Plaintiffs allege their right to rescind was extended to three years from the consummation of the loan due to inadequate disclosures under TILA and that they timely exercised their right to rescind by notifying Defendants of their intent to rescind in writing. (*See, e.g.,* TAC ¶ 150(b).)

Litton and MTGLQ argue the TILA and rescission claims fail as to them because they were not involved with Plaintiffs' loan at the time of origination and were therefore not obligated to make disclosures, Plaintiffs lack standing to bring a rescission claim against them, Plaintiffs did not send a timely rescission notice to them, and the claims are time-barred. Plaintiffs allege "the servicing of

[the] loan had been transferred to Litton Loan Service [*sic*]" from SPS in October 2008. (TAC ¶ 50(h).) MTGLQ did not become involved with the loan until October 21, 2008, when all beneficial interest under the Deed of Trust was transferred to it. (MTGLQ/Litton RJN Ex. 2.) Litton and MTGLQ argue Plaintiffs, despite alleging that they sent a notice of rescission to all Defendants on February 5, 2007 (TAC ¶ 150(b)), could not have provided such notice to them as they were not yet involved with Plaintiffs' loan until it assumed the role of servicer to Plaintiffs' loan in October 2008. Plaintiffs also allege to have given notice of their rescission "by and through this Complaint filed on November 3, 2008." (*Id.* at ¶ 147(g).) Litton and MTGLQ argue there are no allegations that they were served with the November 2008 pleading and they were not named as Defendants at that time. (Doc. 12-1 at pg. 85.) Rather, Plaintiffs served MTGLQ on September 16, 2009, and served Litton after it was named in the TAC, filed on October 14, 2010. (Doc. 12.) Litton and MTGLQ argue any notice they received of Plaintiffs' rescission via service of the Complaint or a notice of rescission was well beyond the three-year period of rescission permitted under TILA. Litton and MTGLQ further argue any claim by Plaintiffs for damages asserted pursuant to TILA in the TAC is untimely under the one-year statute of limitations applicable to such claims, and any claim for rescission is untimely as to them under the maximum three-year statute of limitations for rescission.

Litton and MTGLQ's arguments are unpersuasive at the motion to dismiss stage. Plaintiffs allege they sent Defendants a timely notice of rescission and timely filed a Complaint alleging facts in support of their claim to rescission. Plaintiffs further allege, "[o]n June 12, 2009, plaintiff gave notice of this lawsuit and Notice of Rescission to Goldman Sachs d/b/a MTGLQ Investors L.P., therein disputing the amount of their alleged loan, and duly delivered a Qualified Notice of Rescission to Goldman Sachs via their subsidiary, Defendant MTGLQ Investors, L.P." (TAC ¶ 66; Opp. Ex. VII.) Plaintiffs also allege Litton responded to their notice of rescission and qualified written request for information as to their loan on March 9, 2009 and that "Plaintiff's qualified Notice of Rescission was duly delivered to Defendant Select, Defendant Litton, Defendant Goldman Sachs d/b/a/ MTGLQ Investors L.P. By [sic] certified return receipt mail on over 16 separate occasions from February 5, 2007 until September 2009." (TAC ¶¶ 105, 111.) It is not necessary for the Court to have finally determined Plaintiffs' right to rescission within the three-year period, nor for Plaintiffs to have given

MTGLQ notice of their claim to rescission within the three-year period, which would have been incredibly difficult, if not impossible, given Plaintiffs' Deed of Trust was assigned to MTGLQ just weeks before the three-year period expired and was not recorded until more than three years after the consummation of Plaintiffs' loan. Rather, Plaintiffs' allege they timely notified Defendants of their intent to rescind; timely filed a Complaint alleging facts in support of their claim to rescission; subsequently notified Defendants, including MTGLQ and Litton, of their claim to rescission prior to the foreclosure sale of their property; and Defendants acted improperly in light of their knowledge of Plaintiffs' claim of rescission. These allegations are sufficient to survive a motion to dismiss as to a claim of rescission under TILA and for violations of TILA in connection with the alleged rescission.

Moreover, Plaintiffs also allege a claim for rescission pursuant to California Civil Code § 1689(b)(1) on the basis that Plaintiffs consent to the mortgage was "obtained through duress, menace, fraud, or undue influence." (*See* TAC ¶¶ 52, 60.) MTGLQ and Litton do not address Plaintiffs' claim for rescission of the mortgage on this basis. Accordingly, their motion to dismiss Plaintiffs' claims for violation of TILA and for rescission is **denied.**

### 2. Goldman

Goldman similarly argues there are no factual allegations in the TAC demonstrating that Goldman was involved in the origination of the loan or acted wrongfully with regard to Plaintiffs' purported rescission of the loan. It further argues any claim pursuant to TILA is time-barred as to it because no notice of Plaintiffs' alleged rescission was given to Goldman until October 14, 2010, more than five years after the consummation of Plaintiffs' loan. As discussed above, there are no allegations in the TAC that Goldman itself received notice of Plaintiffs' intended rescission and failed to respond appropriately, or that a loan exists from Goldman to Plaintiffs to be rescinded. Accordingly, Goldman's motion to dismiss this claim is **granted.**

### C. Debt Collection Practices Acts

Plaintiffs allege Defendants violated the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA") by (1) "falsely stating the amount of a debt," (2) "increasing the amount of a debt by including amounts not permitted by law or contract," (3) "improperly foreclosing upon the Subject Property," and (4) "using unfair and unconscionable means in an attempt to collect a debt." (TAC ¶

152.) The RFDCPA serves to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." *Arikat v. JP Morgan Chase & Co.,* 430 F. Supp. 2d 1013, 1026 (N.D. Cal. 2006)(citing Cal. Civ. Code § 1788.1)(emphasis omitted). However, the RFDCPA only governs the conduct of a "debt collector," which under the statute is defined as "any person who, in the ordinary course of business, regularly, and on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code. § 1788.2(c). Similarly, the Fair Debt Collection Practices Act ("FDCPA") applies only to "debt collectors", as defined by the statute. *See* 15 U.S.C. § 1692a(6)(defining "debt collector" as any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another").

### 1. Litton and MTGLQ

Litton and MTGLQ argue Plaintiffs' claims for violation of the RFDCPA and FDCPA fail because the statutes do not apply to collection efforts related to mortgage loans and the nonjudicial foreclosure process. Although the Court has previously recognized some criticism of the general rule in the Ninth Circuit that mortgage foreclosure does not constitute debt collection within the meaning of the Acts (*see* Feb. 22 Order at 5), the Court agrees with Defendants that the general rule should apply here. *See, e.g., Gardner v. Am. Home Mortg. Serv., Inc.*, 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010); *Tina v. Countrywide Home Loans, Inc.*, 08cv1233 JM (NLS), 2008 WL 4790906, at *7 (S.D. Cal. Oct. 30, 2008). As Plaintiffs' allegations of unfair debt collection practices relate to their mortgage and the nonjudicial foreclosure process, Litton and MTGLQ's motion to dismiss these claims is **granted.**

### 2. Goldman

Goldman argues these claims should be dismissed as to it because Plaintiffs have not alleged any facts demonstrating Goldman is a "debt collector" within the meaning of these statutes or that Goldman ever attempted to collect any debt from Plaintiffs. Rather, Plaintiffs only allege unspecified Defendants were non-compliant "with their obligations as Defendants and debt collectors under the TILA." (TAC ¶ 136.) Goldman also argues foreclosing on property does not constitute the collection

of a debt within the meaning of the RFDCPA or the FDCPA. The Court agrees Plaintiffs have not alleged any facts demonstrating Goldman attempted to collect any debt from Plaintiffs. Accordingly, Goldman's motion to dismiss this claim is **granted**.

### D.  Wrongful Foreclosure

Plaintiffs bring a wrongful foreclosure claim against Defendants SPS, MTGLQ Investors, LP, and Rick Ardissoni. Litton and MTGLQ argue Plaintiffs' claims for wrongful foreclosure, quiet title, to set aside the trustee's deed, and to cancel the trust deed fail for the same reasons that the TILA and rescission claims fail because Plaintiffs challenge the foreclosure and deed upon sale on the basis that Plaintiffs rescinded the loan. (TAC ¶¶ 158-72, 262-64, 314-35.) However, as stated above, Defendants' motion to dismiss Plaintiffs' claims for violation of TILA and rescission are denied. Accordingly, Defendants' motions to dismiss Plaintiffs' claim for wrongful foreclosure are also **denied**.

### E.  RESPA

Plaintiffs allege unspecified Defendants violated RESPA by failing to provide a Servicing Statement at the time of closing of their loan, failing to make corrections to Plaintiffs' account, and by failing to adequately respond to alleged qualified written requests ("QWR") submitted by Plaintiffs. (*Id.* at ¶¶ 177, 180.)

#### 1.  Litton and MTGLQ

Litton and MTGLQ argue Plaintiffs' claims under RESPA fail because Plaintiffs do not make sufficient factual allegations to state a plausible claim for relief and because Plaintiffs do not allege to have suffered any damages as a result of the alleged RESPA violations. Under RESPA, a plaintiff may recover any actual damages suffered as a result of the failure to provide the required notice, as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). Litton and MTGLQ argue Plaintiffs' allegation that, as a result of "Defendants' failure to comply with RESPA, and regulation X, Plaintiffs have suffered and continue to suffer damages and costs of suit," (TAC ¶ 194), does not provide enough factual detail to state a plausible claim that Plaintiffs were injured as a result of the RESPA violations. However, Plaintiffs also allege "[a]s a

direct and proximate result of Defendants' failure to comply with RESPA, Plaintiffs have suffered and continue to suffer substantial economic damages including the costs of litigating this suit." (*Id.* at ¶ 195.) These allegations are sufficient to survive at the motion to dismiss stage.

Plaintiffs allege "no party in interest provided any information in response to . . . Plaintiff's February 5, 2009[,] March 2[,] 2009[,] and April 18[,] 2009, Qualified Written Request (QWR) letters until March 9, 2009 when Defendant Litton Loan service contacted Plaintiff in writing to say it would take up [to] 90 days to investigate Plaintiff's demands for substantiation of debt." (TAC ¶ 182; *see id.* at ¶¶ 50(I), 105.) As to MTGLQ, Plaintiffs allege, "[o]n July 6, 2009 Defendant Stephen C. Wichmann contacted plaintiff's [sic] to state that Defendant MTGLQ would be unable to substantiate plaintiffs' debt because it had no records of Plaintiffs' mortgage loan transaction and or [sic] property and suggested that Plaintiffs' [sic] contact Defendant Goldman Sachs." (*Id.* at ¶ 183.) However, the July 6, 2009 letter from Wichmann submitted by Plaintiffs indicates that it is from The Impac Companies in response to a letter from Plaintiffs received by The Impac Companies, which was addressed to MTGLQ–not that it is a response from Wichmann on behalf of MTGLQ, as Plaintiffs argue. (Opp. Ex. IV.) However, Plaintiffs further allege they "delivered Qualified Written Request letters disputing her debt[,] requesting documents inquiring as to the disposition of her loan funds, and therein disputing her debt with Defendant Select, Defendant MTGLQ Investors L.P., Defendant Litton Loan Service, and trustee sale company Quality Loan Service." (TAC ¶ 50(k).) Accordingly, MTGLQ and Litton's motion to dismiss Plaintiffs' claim under RESPA is **denied.**

   **2.   Goldman**

As discussed above, Plaintiffs have not pled sufficient allegations that Goldman was involved in the origination of Plaintiffs' loan and, therefore, it had no disclosure obligations at the time of closing. Plaintiffs also do not include any allegations that they sent a QWR to Goldman. Accordingly, Goldman's motion to dismiss this claim is **granted**.

**F.   Breach of Contract**

To state a claim for breach of contract, a plaintiff must allege the existence of a contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and damages as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

### 1. Litton and MTGLQ

The TAC states the claim for breach of contract is brought against "Defendants Select Portfolio Servicing, and Goldman Sachs d/b/a MTGLQ Investors L.P." (TAC at 65.). Nonetheless, Litton and MTGLQ argue Plaintiffs have failed to allege sufficient facts as to the contractual provision of the loan agreement that they allegedly breached and have failed to sufficiently allege they performed, or had an excuse for not performing, their obligations under the alleged contract. Plaintiffs allege unspecified Defendants breached their contract by failing to "provide [Betty Bryan] with a sustainable loan given her age and fixed income" and to "provide verification of mortgage and substantiation of Betty Bryan's mortgage debt." (*Id.* at ¶ 237.) The Court agrees that Plaintiffs have failed to allege sufficient facts to support a plausible claim for breach of contract as to either MTGLQ or Litton. Accordingly, their motion to dismiss this claim is **granted.**

### 2. Goldman

It is not entirely clear whether Plaintiffs intended to state a claim for breach of contract against Goldman, as the TAC states the claim for breach of contract is brought against "Defendants Select Portfolio Servicing, and Goldman Sachs d/b/a MTGLQ Investors L.P." (*Id.* at 65.). However, to the extent it is stated against Goldman, Goldman argues it should be dismissed because the purported contract is between Plaintiffs and Novelle, the original lender. (*See Id.* at ¶¶ 46, 86, 234; Goldman RJN Ex. 1.) Plaintiffs do not allege the existence of a contract between them and Goldman. Rather, they allege "Plaintiffs have been informed and believe, and therefore allege, that they have never entered into any agreement with Defendant Goldman Sachs who d/b/a MTGLQ Investors L.P. who now claim to ownership possession of their home [sic]." (TAC ¶ 106.) Accordingly, Goldman's motion to dismiss the breach of contract claim is **granted**.

### G. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege "[t]he documents in connection with the Subject Loan, including without Limitation, the loan agreement, promissory note and deed of trust, all include an implied covenant of good faith and fair dealing." (TAC ¶ 241.) They allege the loan itself "violated every implied covenant of Good Faith and Fair Dealing." (*Id.* at ¶ 59.) Plaintiffs further allege Defendants "breached the implied covenant of good faith and fair dealing by, among other things: a) Failing to put

as much consideration to Plaintiffs' interests as to Defendants' interests. b) Initiating foreclosure proceedings on the Subject Property despite not having the right to do so and failing to comply with applicable California law. c) Failing to provide proper notice before commencing a wrongful foreclosure soon followed by eviction proceedings." (*Id.* at ¶ 246.)

### 1. Litton and MTGLQ

Litton and MTGLQ argue this claim should be dismissed as against them because the acts alleged by Plaintiffs were authorized under the loan agreement and/or California law and because the implied covenant is limited to enforcing compliance with the express terms of a contract. "Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant." *Kim v. Regents of the Univ. of Cal.*, 80 Cal. App. 4th 160, 164 (2000); *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1033 (1992)("If there exists a contractual relationship between the parties, . . . the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." (citations omitted)). Plaintiffs do not allege the existence of a contractual relationship between them and Litton. They do allege that MTGLQ "claims to be the successor beneficiary of the promissory note secured by the Property at issue," and attach a copy of the Corporate Assignment of Deed of Trust transferring Plaintiffs' loan to MTGLQ. (TAC ¶ 18, App. at 128.) However, they do not allege what express provisions of the contract the implied covenant of good faith and fair dealing applies to.

To the extent Plaintiffs state a claim for a standalone tort claim regarding the implied covenant of good faith and fair dealing, they are required to show that they were in a special or fiduciary relationship with Litton and MTGLQ. *See DuBarry Int'l, Inc. v. Southwest Forest Ind., Inc.*, 231 Cal. App. 3d 552, 575 n.27 (1991). However, for the reasons discussed herein, they have failed to allege sufficient facts demonstrating the existence of such a special relationship. Accordingly, Litton and MTGLQ's motion to dismiss this claim is **granted.**

### 2. Goldman

Goldman argues this claim should be dismissed as against it because such a claim is limited to assuring compliance with the express terms of a contract, which it was not party to. As Plaintiffs

have failed to allege the existence of a contract between them and Goldman, Goldman's motion to dismiss this claim is **granted.**

### H. Breach of Fiduciary Duty

Plaintiffs' allegations as to breach of fiduciary duty are largely directed at behavior by Defendant Demarco Fletcher. (*See, e.g.,* TAC ¶¶ 197-200.) As to the other Defendants, Plaintiffs allege, "[b]y failing TO COMPLY WITH HER RESCISSION, All other Defendants . . . aided and abetted in the breaches of the fiduciary duties owed by Defendant Demarco Fletcher." (*Id*. at ¶ 200; *see also id.* at ¶ 199 ("The other Defendants owed a duty not to aid and abet the breach of fiduciary duty owed by Defendant Demarco Fletcher.").)

#### 1. Litton and MTGLQ

Litton and MTGLQ argue they owe no fiduciary duty to Plaintiffs, citing two cases for the proposition that a lender does not owe a fiduciary duty to a borrower in the context of an ordinary lender-borrower relationship. *See Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991); *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989). They argue this extends to a servicer of a loan and a subsequent acquirer of a mortgage debt without pointing to authority supporting such claim. Nonetheless, the Court finds the allegations in the TAC insufficient to state a plausible claim of a fiduciary relationship between Plaintiffs and Litton and MTGLQ. Accordingly, Defendants' motion to dismiss this claim is **granted**.

#### 2. Goldman

As discussed above, the TAC does not contain any allegations of a relationship between Plaintiffs and Goldman directly, let alone a relationship giving rise to a fiduciary duty. Accordingly, Goldman's motion to dismiss this claim is **granted.**

### I. Fraud

Plaintiffs assert a claim for fraud-intentional misrepresentation against several individual defendants and a claim for fraud-negligent misrepresentation against all Defendants. To recover for common law fraud under California law, Plaintiffs must demonstrate: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Super. Ct.,* 12 Cal.4th 631, 638 (1996). Unlike fraud, negligent misrepresentation does not require

knowledge of falsity or intent to defraud. *Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 173-74 (2003). Rather, negligent misrepresentation may be shown when there is a false statement made by "one who has no reasonable ground for believing it to be true." *Id.* (citing Cal. Civ. Code § 1710(2)). However, both fraud and negligent misrepresentation claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C. D. Cal. 2003). Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake" and is applied by a federal court to both federal law and state law claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003). A pleading will be "sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995)(quotation omitted). The same is true for allegations of fraudulent conduct. *Vess*, 317 F.3d at 1103-04. In other words, fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Id.* at 1106 (quotation omitted).

Plaintiffs allege negligent misrepresentations regarding three categories of information: (1) "the Subject Loan", (2) "the true amount of the mortgage debt", and (3) "ownership" of the promissory note. (TAC ¶¶ 221-22.)

### 1. Litton and MTGLQ

Litton and MTGLQ argue Plaintiffs' allegations are not pled with the requisite particularity as to them. The Court agrees Plaintiffs have failed to plead the elements of a claim for fraud or negligent misrepresentation as to Litton and MTGLQ with the requisite particularity. Accordingly, their motion to dismiss Plaintiffs' claim for fraud-negligent misrepresentation is **granted**.

### 2. Goldman

Goldman similarly argues Plaintiffs have failed to allege fraud with the requisite particularity as to it. The Court agrees. Plaintiffs do not allege any purported statement or representation by Goldman to them, let alone a misrepresentation. Accordingly, Goldman's motion to dismiss this claim is **granted**.

### J. California Business & Professions Code § 17200

California law prohibits unfair competition, defined as "any unlawful, unfair or fraudulent

business act or practice." Cal. Bus. & Prof. Code § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it established three varieties of unfair competition–acts or practices which are unlawful, unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)(citation omitted). "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (citation and internal quotations omitted). A business practice is "fraudulent" within the meaning of § 17200 if members of the public are likely to be deceived. *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1146 (2001)(citing *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal.3d 197, 211 (1983)). "[A]n 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001)(quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)).

### 1. Litton and MTGLQ

Litton and MTGLQ argue this claim is based upon the same conduct as Plaintiffs' first eight causes of action and therefore fails for the same reasons. In so arguing, Litton and MTGLQ focus solely on the unlawful prong of § 17200. However, Plaintiffs allege "Defendants committed unlawful, unfair and/or fraudulent business practices." (TAC ¶ 229.) Litton and MTGLQ do not address the unfair and fraudulent elements of § 17200 and do not discuss whether Plaintiffs have stated a plausible claim for relief under either prong. Accordingly, Litton and MTGLQ's motion to dismiss this claim is **denied**.

### 2. Goldman

Goldman argues the allegations in the TAC that support Plaintiffs' claim for violation of § 17200 relate to the circumstances surrounding the origination of Plaintiffs' loan, the resulting foreclosure, Plaintiffs' attempt to rescind the loan, and the subsequent sale of the property–all of which relate to actions taken by others, not Goldman. As discussed above, the TAC contains no allegations of conduct by Goldman directed at Plaintiffs or in violation of a law, or of misrepresentations made by Goldman to Plaintiffs. Goldman's motion to dismiss this claim is **granted**.

**K.      California Civil Code § 2923.5**

Section 2923.5(c) requires a mortgagee, trustee, beneficiary, or authorized agent who filed a notice of default prior to the enactment of the section to include a declaration with the notice of sale stating that it had contacted the borrower to explore options to avoid foreclosure or had attempted to contact the borrower. Cal. Civ. Code § 2923.5(c). However, here, Plaintiffs do not include any allegations regarding the Notice of Sale. Rather, Plaintiffs allege the "Declaration of compliance with newly enacted Civil Code 2923.5 was attached to plaintiffs['] default, falsely stated that Defendant Select attempted to contact Plaintiff Betty Bryan to discuss her financial situation to avoid foreclosure." (TAC ¶ 253.) Plaintiffs also allege "Defendant MTGLQ's eviction of Plaintiffs was wrongful pursuant to Defendant Select's non-compliance with California Civil Code 2923.5." (*Id.* at ¶ 255.) These allegations are insufficient to state a claim for violtion of § 2923.5 as to Defendants. Furthermore, "the *only* remedy provided [by section 2923.5] is a postponement of sale before it happens." *Mehta v. Wells Fargo Bank, N.A.*, No. 10-CV-944 JLS (AJB), 2010 WL 3385020, at *6 (S.D. Cal. Aug. 26, 2010)(quoting *Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 220-21 (2010)). Accordingly, Defendants' motions to dismiss this claim are **granted**.

**L.      Quiet Title**

Plaintiffs allege they "seek a quieting of title against the trustee's deed upon sale which is the basis of legal title claims by Defendant SELECT and Defendant MTGLQ." (TAC ¶ 262.) To state a claim to quiet title, "the complaint shall be verified" and must include all of the following: (1) a legal description of the property and its street address or common designation; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. Cal. Code Civ. Pro. § 761.020.

**1.      Litton and MTGLQ**

Litton and MTGLQ argue this claim should be dismissed because it is dependent upon Plaintiffs' challenge of the foreclosure process and deed upon sale on the basis that Plaintiffs rescinded the loan. However, for the reasons set forth above, Plaintiffs have stated a plausible claim under TILA and for rescission. Accordingly, motion to dismiss this claim is **denied.**

### 2. Goldman

There are no allegations in the TAC that Goldman claims any right, title, or interest in Plaintiffs' loan or that Goldman was involved in the foreclosure or subsequent sale of the property. Moreover, Plaintiffs allege MTGLQ is in possession of the note. Accordingly, Goldman's motion to dismiss this claim is **granted**.

## M. Elder Abuse

Financial abuse of an elder occurs when an entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30. In support of their claim for elder abuse, Plaintiffs allege misrepresentations in the loan origination and that Defendants engaged in a wrongful foreclosure on the subject property in light of their knowledge of Plaintiffs' alleged valid rescission. (*See* TAC ¶¶ 65, 268-69.) Plaintiffs allege, "[s]ubsequent to Betty Bryan's valid February 5, 2007 Notice of Rescission, all the above Defendants herein named took, secreted, appropriated and/or retained real or personal property of elder Plaintiff Betty Bryan for a wrongful use or with the intent to defraud, or both. Defendants' acts were done in bad faith." (*Id.* at ¶ 269.)

### 1. Litton and MTGLQ

Litton Loan and MTGLQ argue Plaintiffs' alleged rescission was not valid as to them for the reasons set forth above and, therefore, any allegations of elder abuse as to them stemming from their allegedly unlawful foreclosure upon Plaintiffs' property do not state a plausible claim for relief. (*See id.* at ¶¶ 127-35.) For the reasons discussed above, Plaintiffs' claims for rescission survive Defendants' motion to dismiss and Litton and MTGLQ's motion to dismiss Plaintiffs' claim for elder abuse is therefore **denied.**

### 2. Goldman

Goldman argues Plaintiffs fail to allege it took, appropriated, obtained, or retained or assisted in the taking, appropriating, or obtaining of Plaintiffs' property because all of the allegations in the TAC are as to actions by Defendant Demarco Fletcher in the solicitation and origination of Plaintiffs' loan, Plaintiffs' attempt to rescind the loan, and the foreclosure. (*Id.* at ¶¶ 268-69, 271.) The Court agrees and Goldman's motion to dismiss this claim is **granted**.

**N.     Set Aside Trustee's Sale and Cancel Trustee's Deed**

   **1.     Litton and MTGLQ**

Litton and MTGLQ argue Plaintiffs' claims to set aside the trustee's deed and to cancel the trust deed fail for the same reasons that the TILA and rescission claims fail because Plaintiffs challenge the foreclosure and deed upon sale on the basis that Plaintiffs rescinded the loan. (TAC ¶¶ 158-72, 262-64, 314-35.)  For the reasons set forth above, the motion to dismiss these claims is **denied.**

   **2.     Goldman**

Goldman argues Plaintiffs' claims to set aside the trustee's sale and to cancel the trustee's deed should be dismissed because the TAC contains no allegations that Goldman was involved in the transactions at issue. The Court agrees and Goldman's motion to dismiss these claims is **granted**.

**O.     Accounting**

"To be entitled to an accounting, a plaintiff must demonstrate at least one of the following: a breach of fiduciary duty, fraud, or that the accounts are complicated and there is a dispute as to whether the money is owed." *Miller v. Cal. Reconveyance Co.*, No. 10-CV-421 IEG (CAB), 2010 WL 2889103, at *9-10 (S.D. Cal. July 22, 2010)(citing *Union Bank v. Super. Ct.,* 31 Cal. App. 4th 573, 593-94 (1995)). Plaintiffs here allege they have not been provided with documents substantiating the amount remaining on their mortgage, but believe that certain amounts paid have not been credited to their account and that the mortgage has not been equitably reduced pursuant to their alleged rescission. (*See* TAC ¶¶ 75, 77.) However, as discussed above, Plaintiffs have not sufficiently stated a claim for breach of fiduciary duty or fraud as to these Defendants and have not alleged the account is so complicated that a judicial accounting is necessary.  Accordingly, Litton, MTGLQ, and Goldman's motions to dismiss the accounting claim are **granted**.

## IV.
## CONCLUSION

For the foregoing reasons, Goldman's motion to dismiss is granted in its entirety and Litton and MTGLQ's motion to dismiss is granted in part and denied in part.  Because Plaintiffs have been given sufficient opportunity to amend their Complaint and have elected not to do so, no further


**IT IS SO ORDERED.**

DATED: August 9, 2011

_____
HON. DANA M. SABRAW
United States District Judge